**COLONIAL PIPELINE COMPANY, and Other Persons Similarly Situated, Plaintiff–Appellant,**

v.

**Marcus E. COLLINS, Sr., et al., Defendants–Appellees.**

No. 89–8750.

United States Court of Appeals, Eleventh Circuit.

Jan. 22, 1991.

Nickolas P. Chilivis, Chilivis and Grindler, John K. Larkins, Jr., Ronnie L. Quigley, Davis, Matthews & Quigley, E. Diana Hamner, Atlanta, Ga., for plaintiff-appellant.

Cynthia G. Weaver, Heard, Leverett & Phelps, PC, Elberton, Ga., for Counties Boards of Tax Assessors, Tax Equalization and Com'rs.

E.S. Sell, Jr., Macon, Ga., for Bibb County Bd. of Comm. and Macon–Bibb County Tax Assessors.

Lucy T. Sheftall, Georgia Dept. of Law, Atlanta, Ga., for Marcus E. Collins, Hogan and Crawford & State.

Hogan, Crawford and State Bd. of Equalization Warren R. Calvert, Georgia Dept. of Law, David A. Runnion, Senior Asst. Atty. Gen., Atlanta, Ga., Jefferson James Davis, Sp. Asst. Atty. Gen., Decatur, Ga., for Collins et al.

Albert Sidney Johnson, DeKalb County Attorney, Decatur, Ga., for DeKalb County Bd. of Tax Assessors and DeKalb County Bd. of Equalization.

Before JOHNSON and CLARK, Circuit Judges, and BROWN *, Senior District Judge.

CLARK, Circuit Judge:

Colonial Pipeline Company, a public utility doing business in Georgia, brought this action pursuant to 42 U.S.C. § 1983 (1988) challenging the recently amended Georgia ad valorem tax system. Ga.Code Ann. §§ 48–2–18; 48–5–1 to –545 (1982 & Supp. 1990). Colonial alleges that they and other similarly situated entities [1] have been denied equal protection and due process of law as a result of certain inequities resulting from this system. The gravamen of Colonial's claim is that poor administration of the ad valorem tax system by the state and counties has lead to a pattern of proportionately higher assessments of the property of "centrally assessed" taxpayers relative to non-centrally assessed taxpayers. In addition, Colonial contends that the review and appeal process specified in this tax scheme is so infected with cumbersome procedures and poor administration that it is impossible to obtain adequate review of its unequal tax assessment claim.

As relief, Colonial requested an injunction covering the following items:

1) prohibiting the state revenue commissioner from approving any county's tax digest from 1989 and onward until the digest is in complete compliance with Georgia constitutional and statutory requirements and the federal constitution;

2) ordering the abatement of accrued and accruing interest on the unpaid portion of Colonial's proposed assessments from 1985 onward;

3) suspending the statute of limitations on the filing of refund claims in the counties and municipalities;

4) directing the state and county taxing authorities to hire adequate staffs;

5) directing the state and county taxing authorities to assess equally and uniformly all taxable property as mandated by the Georgia Constitution;

6) ordering the state Board of Equalization to hire hearing officers to expedite pending appeals before it;

7) ordering the state and county taxing authorities to compile statistically valid ratio studies for the tax years 1985 onward as to real and personal tangible property; and

8) appointment by the district court of a monitor to oversee compliance with any judgment in this case.

The district court dismissed the suit for lack of subject matter jurisdiction on the grounds that the Tax Injunction Act, 28 U.S.C. § 1341 (1988), barred Colonial's claims. The court found that the requested relief would interfere with the administration of the state tax system and that the state already provided an adequate remedy within the meaning of section 1341. Because we find that Colonial has alleged sufficient facts to support its claim that the state ad valorem tax review and appeal remedy is inadequate, we REVERSE the judgment of the district court and REMAND for further proceedings to determine whether the state review system as it currently functions is in fact inadequate.

## I. BACKGROUND

A. Centrally–Assessed Taxpayers Under Georgia's Ad Valorem Tax System

All tangible property in Georgia must be returned for taxation at its fair market value and assessed at 40% of that value. Ga.Code.Ann. §§ 48–5–6 to –7. The Georgia Constitution mandates equalization and uniformity of taxation on all real and personal property. Ga. Const. of 1983, art. VII, § 1, ¶ 3.

The administration of these basic rules, however, has created a substantial disparity between the assessments levied against "centrally assessed" taxpayers such as public utilities that must file with both the

---

* Honorable Wesley E. Brown, Senior U.S. District Judge for the District of Kansas, sitting by designation.

1. In its complaint, Colonial alleges that it is entitled to bring this action as a class action, but the class has not yet been certified pursuant to Fed.R.Civ.P. 23(c).

state and counties in which it owns property and all other taxpayers who file only with the counties.[2] *See* Ga.Code Ann. §§ 48–5–511, –519, –541. This disparity arises because the returns required to be filed by centrally assessed taxpayers give the state comprehensive, annually updated information on the fair market value of all property owned by such taxpayers. Colonial alleges that based on this information, the state Board of Equalization then routinely assesses centrally assessed taxpayers at the maximum legal rate of forty percent.

Other ad valorem taxpayers, however, are not required to file annual returns and the valuation and assessment of their properties is commonly carried forward from year to year without any increases by county tax officials because of the failure to hire sufficient staff to regularly review records, valuations, and assessments. *See id.* § 48–5–20. As a result, Colonial alleges that most counties have incomplete tax records that do not include large percentages of taxable property, and the records themselves have not been updated in ten to twenty years resulting in assessments of recorded property at far below market value. In Colonial's view, this problem is exacerbated by the state revenue commissioner's regular approval of these county records with full knowledge that they are incomplete and that listed properties are undervalued and underassessed.[3] As a result, centrally-assessed taxpayers are taxed on the basis of more complete and current valuations and assessments of their property relative to other ad valorem taxpayers which causes them to pay a proportionately greater amount of tax.

### B. Review and Appeal Process

Colonial also claims that the review and appeal process incorporated in Georgia's ad valorem tax system is plagued with similar problems that render it virtually useless for correcting unequal tax assessments. Before the 1988 amendments to Georgia's ad valorem tax system, centrally-assessed taxpayers could appeal to the state Board of Equalization on issues of valuation and assessment. *Id.* § 48–2–18 (1982) (amended 1988). Colonial alleges, however, that only two part-time hearing officers are available to hear these appeals which has resulted in a backlog of more than 70 appeals filed by centrally assessed taxpayers for proposed assessments from tax years 1985 to 1988. Only one appeal has been heard and no decisions have ever been rendered by the Board.[4]

The 1988 amendments introduced several significant changes to the treatment of centrally-assessed taxpayers by expanding the role of the counties in making assessment determinations and handling appeals. Under this new regime, the commissioner prepares and the state Board approves an initial assessment of the property of centrally-assessed taxpayers—referred to in the legislative history as the "proposed assessment"—which is then transmitted to the counties.[5] *Id.* § 48–2–18(c) (Supp.1990). After receipt of the "proposed assessment", a county may, but is not required to, use these figures as the county's own

2. Failure by a public utility to file a return with the state results in forfeiture of the corporate charter or the taxpayer's permit to do business in the state. Ga.Code Ann. § 48–5–513 (Supp. 1990).

3. Colonial also alleges that the assessment-ratio study which is performed in Georgia on an annual basis to ensure equalization and uniformity in county assessments is flawed because of poor methodology and incorrect data.

4. Colonial also contends that this backlog of cases is further complicated by the Georgia statute governing tax refunds. *Id.* § 48–5–380. This statute requires that a claim of refund must be filed with each county and municipality to which a centrally-assessed taxpayer pays taxes within three years of the time that the taxes are actually paid. Because Colonial pays taxes to 37 counties and 11 municipalities, 48 refund claims are generated each year. Through 1987, Colonial has filed 144 claims for refund. Under the literal terms of section 48–5–380, these refund claims could be decided by taxing authorities of each county and be ripe for appeal to the various county superior courts *prior* to a hearing by the state Board on the underlying valuation and assessment issues.

5. The proposed assessment is also sent to centrally assessed taxpayers at the same time it is sent to the county. *Id.* § 48–2–18(c).

tax assessment. Whether the county accepts the state assessment as its own or issues a locally generated assessment, the county must issue within 30 days a "final assessment" to the taxpayer. *Id.* § 48–2–18(d).

The expanded role of the counties under this new regime was accompanied by the establishment of a two-part appeals process. First, the 1988 amendments eliminated a centrally-assessed taxpayer's right to appeal directly to the state Board from a "proposed assessment"; rather, a taxpayer must now appeal to the Fulton County Superior Court within 30 days of the receipt of a "proposed assessment". *Id.* § 48–2–18(c). Second, appeals from "final assessments" must be pursued at the county administrative level within 30 days from the date of notice of such assessments.[6] *Id.* §§ 48–2–18(d), –5–311(e).

Colonial alleges that this new appeals procedure is excessively burdensome because it creates circumstances where a centrally-assessed taxpayer must pursue simultaneous appeals in the Fulton County Superior Court for the "proposed assessment" and appeals in each county in which it owns property. Thus, Colonial contends that in any given year it could be required to litigate in each of the 37 counties in which it owns property and also pursue an appeal in the Fulton County Superior Court against the state Board's "proposed assessment".[7]

In a recent interpretation of this new statutory scheme, the Georgia Supreme Court attempted to reconcile these two branches of appeals by eliminating some of their duplicitous elements. *See Telecom * USA, Inc. v. Collins*, 260 Ga. 362, 393 S.E.2d 235 (1990). As a matter of statutory interpretation, the court held that when a county adopts the state Board's "proposed assessment" as its own "final

assessment" without modification, an appeal from a decision of the state Board under section 48–2–18(c) is conclusive as to all issues, thereby obviating the need for a separate appeal in that particular county. *See id.* at 366, 393 S.E.2d at 239. On the other hand, when a county changes a "proposed assessment" before issuing its own "final assessment", a centrally-assessed taxpayer should pursue a separate appeal in the county under section 48–2–18(d) in addition to any appeal from the state Board's assessment. *Id.* at 365–66, 393 S.E.2d at 239.

In the latter case, the Georgia Supreme Court reasoned that a county's modification of a "proposed assessment" must be based on more current or credible information than that used by the state Board and therefore an appeal from this decision would involve different issues than those presented at an appeal at the state level. *Id.*, 393 S.E.2d at 239. Under this interpretation of the 1988 amendment, the court reasoned that "utilities are not subjected to a multiplicity of lawsuits" because "[a]lthough they may file several appeals, each will deal with distinct issues and evidence." *Id.* at 366, 393 S.E.2d at 239.

## II. DISCUSSION

In this case we are faced with the issue of whether the Tax Injunction Act bars a federal court from hearing a taxpayer's claims that state and county taxing authorities should provide timely and efficient relief for its challenges to tax assessments against it.

### A. Applicability of Tax Injunction Act

■ The Tax Injunction Act provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or

---

6. However, if the taxpayer notifies the state revenue commissioner and the county within 20 days that it intends to dispute the "proposed assessment", the county is permitted to include in the county digest only the undisputed amount of tax. *Id.* § 48–2–18(c).

7. In addition, Colonial contends that other 1988 amendments to Georgia's ad valorem tax laws

have the effect of delaying indefinitely the requirement that a county brings its tax digest up to the standard mandated by Georgia's statutory and constitutional requirements by adopting relaxed statistical measurements to be used in assessment-ratio studies. *See id.* §§ 48–5–340 to –349.5.

collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The limitation imposed by the act is *jurisdictional;* it embodies the general principle that the jurisdiction of the federal courts to "interfere with so important a local concern as the collection of taxes" must be drastically limited. *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522, 101 S.Ct. 1221, 1233–34, 67 L.Ed.2d 464 (1981). Thus, absent a showing by a complainant that state law does not provide a sufficient remedy for his constitutional claims, a federal district court lacks jurisdiction to entertain a challenge to a state's scheme of taxation. *See California v. Grace Brethren Church*, 457 U.S. 393, 407–11, 102 S.Ct. 2498, 2507–09, 73 L.Ed.2d 93 (1982) (applying Act to declarative relief); *Rosewell*, 450 U.S. at 512, 101 S.Ct. at 1228–29 (applying Act to injunctive relief); *Moss v. Georgia*, 655 F.2d 668, 669 (5th Cir. Unit B 1981) (applying Act to action for refund and damages).

Colonial, however, seeks to dodge the Act's jurisdictional bar on the grounds that it "seek[s] no present interference with the assessment, levy or collection of taxes" or violation of "the integrity of the state treasury." Rather, it contends that the net effect of its requested items of relief—viewed separately or as a whole—would be to "enhance" and "promote" the assessment and collection of taxes through improved administration, expedited appeals, and federal judicial implementation of federal and state constitutional norms. Because such relief would enlarge tax revenues by increasing the valuation and assessment of currently undervalued properties, Colonial asserts that the Tax Injunction Act's jurisdictional bar is not applicable. *See, e.g., Appling County v. Municipal Elec. Auth.*, 621 F.2d 1301 (5th Cir.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980); *Hargrave v. McKinney*, 413 F.2d 320 (5th Cir.1969).

In making these overly literal and technical attempts to distinguish its claim from the scope of section 1341, Colonial ignores the basic fact that its requested relief, if granted, would require a massive federal judicial intervention into virtually all phases of Georgia's ad valorem tax system. Such an intrusion would clearly conflict with the principle underlying the Tax Injunction Act that the federal courts should generally avoid interfering with the sensitive and peculiarly local concerns surrounding state taxation schemes. *See Rosewell*, 450 U.S. at 527–28, 101 S.Ct. at 1236–37; *A Bonding Co. v. Sunnuck*, 629 F.2d 1127, 1133 (5th Cir.1980). As the Supreme Court has noted, "the legislative history of the Tax Injunction Act demonstrates that *Congress worried not so much about the form of relief* available in the federal courts, as about divesting the federal courts of jurisdiction to interfere with state tax administration." *Grace Brethren Church*, 457 U.S. at 409 n. 22, 102 S.Ct. at 2508 n. 22 (emphasis added).

▮ In assessing whether a complainant's claim runs afoul of the Tax Injunction Act, we must look not only at whether the literal terms of the statute are implicated, but also at whether the requested relief requires such an exercise of federal judicial power as to collide with the broad purposes of the Act. In holding that a federal court was barred from granting declaratory relief by section 1341, for example, the Supreme Court noted that that " 'procedure may in every practical sense operate to suspend collection of the state taxes until the litigation has ended.' " *Id.* at 408, 102 S.Ct. at 2508 (quoting *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943)). Colonial's various points of requested relief boil down to the basic proposition that the federal courts should oversee a redistribution of the ad valorem tax burden in Georgia between centrally-assessed and non-centrally assessed taxpayers through a campaign of systemic reform.[8] Although not dressed

---

**8.** Nor are we impressed by Colonial's contention that the impact of its requested relief would act only to increase the valuation and assessment of currently undervalued property. Indeed, as it

noted in its brief, implementation of its requested relief could also have the equally likely alternative of *reducing* the assessments on Colonial's own property. In actuality, Colonial is assert-

in the guise of an injunction, implementation of such relief would be at least as disruptive as the issuance of injunctive relief, and this court has held that such claims for redistribution clearly fall within the ambit of section 1341. *See Williams v. City of Dothan*, 745 F.2d 1406, 1411 (11th Cir.1984). Although we express no opinion at this stage about whether such judicial intervention is warranted, we conclude that the district court was correct in holding that Colonial's claims are subject to the jurisdictional bar of section 1341.

Although it did not specifically base its decision on this ground, we also note that general principles of comity may require the district court to abstain from granting Colonial's requested relief. *See Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); *In re Gillis*, 836 F.2d 1001 (6th Cir.1988); *Ayers v. Polk County*, 697 F.2d 1375 (11th Cir.1983). This policy of equitable restraint, which predates the passage of section 1341 and now overlays that express jurisdictional bar, is also premised on the availability of a "plain, adequate, and complete" state remedy for asserted violations of federal rights.

*McNary*, 454 U.S. at 116, 102 S.Ct. at 186. The question of whether this doctrine prevents the district court from adjudicating Colonial's claims, however, is not properly before us at this time because of our following conclusion that the district court erred in not allowing the parties to develop a fuller record on the adequacy of state remedies for Colonial's constitutional claims.

### B. Adequacy of State Remedies

■■■ In assessing the propriety of a motion for dismissal under Fed.R.Civ.P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction. *See Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). Although a district court has wide discretion to determine the scope of such discovery, a plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction. *See Gould*, 853 F.2d at 451; *Majd–Pour v. Georgiana*

---

ing that the ad valorem tax burden in Georgia should be redistributed; that is, it should pay proportionately fewer taxes while non-centrally assessed taxpayers should pay proportionately more. *See In re Gillis*, 836 F.2d 1001 (6th Cir. 1988).

Similarly, *Hargrave v. McKinney*, 413 F.2d 320 (5th Cir.1969) and *Appling County v. Municipal Elec. Auth.*, 621 F.2d 1301 (5th Cir.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980) are inapposite here. These cases dealt with the "exceedingly narrow" question of whether a federal court may declare unconstitutional one provision of a state's tax law that would have the effect of increasing tax collections. *See Hargrave*, 413 F.2d at 325. By mounting only facial attacks on state tax laws, the prayers for relief in those cases required only very limited federal judicial intervention. In contrast, Colonial's requested relief would entail wide-ranging scrutiny of Georgia's tax assessment apparatus and possibly the implementation of extensive remedial relief. *See In re Gillis*, 836 F.2d at 1007–08; *cf. Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 107 n. 4, 102 S.Ct. 177, 181 n. 4, 70 L.Ed.2d 271 (1981).

We find support for this view in the Supreme Court's recent decision in *Missouri v. Jenkins*, — U.S. ——, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990). Although finding that a district court violated principles of comity when it imposed an increase in the property tax levy to fund a school desegregation order, it held that "a local government with taxing authority may be ordered to levy taxes in excess of the limit set by state statute when there is reason based in the Constitution for not observing the statutory limitation." *See id.* at 1662–67. Read in light of the Court's other precedents, we believe that *Jenkins* stands for the proposition that a federal court has only a circumscribed power to interfere with a state's taxation system in order to remedy constitutional violations arising from causes *independent* of the taxation scheme. *See id.* at 1666; *Griffin v. County School Bd.*, 377 U.S. 218, 232–34, 84 S.Ct. 1226, 1233–35, 12 L.Ed.2d 256 (1964). Where, as in this case, the constitutional infirmities are alleged to arrive from the operation of the tax system itself, the Tax Injunction Act provides only an avenue of relief in the state courts, with ultimate review in the Supreme Court. *Rosewell*, 450 U.S. at 513, 101 S.Ct. at 1229.

*Community Hosp., Inc.,* 724 F.2d 901, 903 (11th Cir.1984).

█ In this case, the district court did not allow a full factual inquiry into the truthfulness of Colonial's allegations concerning the adequacy of state remedies for its constitutional claims. Although Georgia's ad valorem tax system is no stranger to the federal courts,[9] we conclude that the 1988 amendments have so significantly altered the assessment and appeals processes for centrally-assessed taxpayers that their adequacy within the meaning of section 1341 remains an open question. *See Telecom\*USA, Inc.,* 260 Ga. at 365, 393 S.E.2d at 238 (finding that "the plain language of the statute, its caption, and its history, all indicate that the legislature intended for the counties to play a new role in the taxation of utilities").[10] Colonial's allegations support the conclusion that the tax review and appeals process for centrally-assessed taxpayers is not only burdensome and fraught with delays, but that it has ceased to function by any practical measure. The record assembled in the district court, however, is insufficient to determine whether or not this is, in fact, the case. We therefore remand this case to the district court for the development of a broader record on this point before deciding whether it has jurisdiction to hear this case.

In essence, Colonial has made two general allegations that Georgia's ad valorem tax review and appeals process is not an adequate remedy within the meaning of section 1341. First, Colonial argues that the basic elements of a functional tax system are missing in Georgia and, as a result, there can be no meaningful reform unless it has access to the injunctive powers of a federal court. Due to various perceived deficiencies, Colonial contends that the equitable relief afforded by Georgia state courts would be insufficient to address these systemic concerns. Second, Colonial argues that the multiplicitous number of suits it must pursue to appeal the valuation and assessment of its properties is not only inefficient and burdensome, but would also lead to disparate results among the different forums on the basic questions of valuation and equalization.[11]

In order to constitute a "plain, speedy, and efficient remedy," the Supreme Court has stated that the remedies provided in a state court must provide a taxpayer "with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *Rosewell,* 450 U.S. at 514, 101 S.Ct. at 1230. For instance, the Court in *Rosewell* found that

9. *See, e.g., Georgia R.R. & Banking Co. v. Redwine,* 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952); *Waldron v. Collins,* 788 F.2d 736 (11th Cir.), *cert. denied,* 479 U.S. 884, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986); *Ayers v. Polk County,* 697 F.2d 1375 (11th Cir.1983); *Noble v. Joint City–County Bd. of Tax Assessors,* 672 F.2d 872 (11th Cir.1982); *Moss v. Georgia,* 655 F.2d 668 (5th Cir. Unit B 1981); *Kiker v. Hefner,* 409 F.2d 1067 (5th Cir.1969); *Adams v. Smith,* 415 F.Supp. 787 (N.D.Ga.1976), *aff'd,* 568 F.2d 1232 (5th Cir.1978).

10. In addition, it should be noted that Colonial's allegations of the inadequacy of state remedies also stem from the backlog of hearings before the State Board of Equalization under the review and appeals process in effect before the 1988 amendments. On remand, the district court should also direct its attention to developing a record on the adequacy of these portions of the superseded scheme that are still relevant.

11. On a number of occasions, it has been held that Georgia provides a "plain, speedy, and effi-

cient remedy" under which a complainant may bring a challenge to the operation of the state's ad valorem tax system. *See Waldron,* 788 F.2d at 737–38; *Ayers,* 697 F.2d at 1376–77; *Noble,* 672 F.2d at 875; *Moss,* 655 F.2d at 669; *Kiker,* 409 F.2d at 1069–70; *Adams,* 415 F.Supp. at 789–92.

These cases deal with a number of different aspects of the remedies available in Georgia state courts, including administrative avenues of appeal and state suits in equity. On remand, they remain binding only to the extent to which their underlying premises were left unchanged by the 1988 amendments to the ad valorem tax system and other relevant intervening events. In addition, as we note below, the district court must consider whether the litigation burdens imposed by these remedies are so onerous as to render such relief inadequate. The burdens are not merely statutorily imposed, but are influenced by conditions on the courts' docket which may change from year-to-year. Thus, the district court on remand should be mindful of the fact that its inquiry will be influenced by relatively recent or contemporaneous factors.

the state remedy at issue was adequate because the taxpayer could raise her constitutional claims in a state-court refund procedure. *Id.* at 514, 101 S.Ct. at 1229–30; *see also Grace Brethren Church,* 457 U.S. at 413–16 & n. 31, 102 S.Ct. at 2510–12 & n. 31. Applying this same standard, we have also held a state remedy to be inadequate when a taxpayer was effectively barred from *ever* raising his constitutional claims either through the statutory appeals process or any other state avenue of review. *See Williams v. City of Dothan,* 745 F.2d 1406, 1412–13 (11th Cir.1984).[12]

In assessing the adequacy of state court remedies, the Supreme Court, however, has instructed that the "plain, speedy, and efficient" exception to the Tax Injunction Act must be construed narrowly. *Grace Brethren Church,* 457 U.S. at 413, 102 S.Ct. at 2510. State remedies must only meet certain "minimal *procedural* criteria," and a reviewing court should eschew any analysis of their substantive sufficiency so long as a complainant has some opportunity to raise his constitutional objections. *See Rosewell,* 450 U.S. at 512–15, 101 S.Ct. at 1228–30. For example, in *Grace Brethren Church,* the Supreme Court held that a state court remedy was not inadequate due to the fact that injunctive relief was unavailable because the taxpayer could ultimately seek a judicial determination of the constitutionality of the tax at issue. *See* 457 U.S. at 415–16, 102 S.Ct. at 2511–12. In a similar vein, we have noted that "the Tax Injunction Act ... [does] not require[ ] 'that the state remedy be the best remedy available or even equal to or better than the remedy which might be available in federal court.'" *Ayers v. Polk County,* 697 F.2d 1375, 1377 (11th Cir.1983) (quoting *Bland v. McHann,* 463 F.2d 21, 29 (5th Cir.1972)).

On remand, the district court should apply these principles in determining whether Colonial's state remedies afford it an opportunity for judicial determination of its constitutional claims against Georgia's ad valorem tax system. Colonial, however, also contends that state remedies are not "plain, speedy, and efficient" because Georgia state courts will not entertain jurisdiction of a suit brought under 42 U.S.C. § 1983 "founded only on the claim that [ad valorem tax] assessments are unequal." *See Backus v. Chilivis,* 236 Ga. 500, 504–05, 224 S.E.2d 370, 373–74 (1976); *accord Vann v. DeKalb County Bd. of Tax Assessors,* 186 Ga.App. 208, 211–12, 367 S.E.2d 43, 47 (1988). It points to a rather cryptic suggestion by the Supreme Court that the availability of a section 1983 action in a state court is to be considered a factor in determining whether a state provides an adequate remedy. *See McNary,* 454 U.S. at 116–17, 102 S.Ct. at 186–87.

We believe that this contention misperceives the nature of a federal court's inquiry into the adequacy of state remedies under the Tax Injunction Act. The mere fact of the availability or unavailability of a section 1983 suit in state courts is not the linchpin to such analysis. *Cf. Rosewell,* 450 U.S. at 511 n. 14, 101 S.Ct. at 1228 n. 14 (declining to reach the question of whether availability of a section 1983 in state court does not bar federal jurisdiction). Rather, the district court, on remand, must scrutinize the *totality* of state court remedies available to Colonial to determine whether it has "some opportunity to raise [its] constitutional objections." *Grace Brethren Church,* 457 U.S. at 412 n. 26, 102 S.Ct. at 2509 n. 26. Whether a section 1983 claim is unavailable to Colonial in Georgia state courts is simply one factor to be considered in this broad inquiry.[13] In

---

**12.** The Supreme Court has also established a corollary to this rule that the availability of a state remedy may be so uncertain, unclear, or speculative that it does not constitute a "plain" remedy within the meaning of section 1341. *See Franchise Tax Bd. v. Alcan Aluminium Ltd.,* — U.S. —, 110 S.Ct. 661, 666–67, 107 L.Ed.2d 696 (1990); *Rosewell,* 450 U.S. at 517, 101 S.Ct. at 1231; *Tully v. Griffin, Inc.,* 429 U.S. 68, 76, 97 S.Ct. 219, 224, 50 L.Ed.2d 227 (1976); *Hillsbor-*

*ough Township v. Cromwell,* 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946).

**13.** Although a suit under section 1983 provides certain unique advantages to a complainant over a state remedy, including the provision of attorney fees, *see* Note, *Clarifying Comity: State Court Jurisdiction and Section 1983 State Tax Challenges,* 103 Harv.L.Rev. 1888, 1899–1902 (1990), we do not believe that these items, *stand-*

both *Rosewell* and *Grace Brethren Church,* the Supreme Court upheld admittedly laborious state-created remedies because it found that a complainant could eventually seek relief from a state court. *See* 457 U.S. at 413–17, 102 S.Ct. at 2510–13; 450 U.S. at 516–21, 101 S.Ct. at 1230–33. Having reached these findings, it became unnecessary for the Court to inquire further about the availability of a federal cause of action in state court.[14]

On remand, the district court must also seek to develop a fuller record on Colonial's allegations that Georgia state court remedies are inefficient and fraught with delays. Despite its " 'procedural interpretation' " of the phrase a " 'plain, speedy, and efficient remedy,' " *Rosewell,* 450 U.S. at 516, 101 S.Ct. at 1230, the Supreme Court has indicated that the litigation burdens imposed by state remedies are pertinent to a court's overall assessment of their adequacy. Thus, a state remedy is not "efficient" if it imposes "unusual hardship ... requiring ineffectual activity or an unnecessary expenditure of time or energy." *Id.* at 518, 101 S.Ct. at 1231. For example, in *Georgia R.R. & Banking Co. v. Redwine,* 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952), the Court held a state remedy, which required the filing of over 300 claims in fourteen counties to protect a single federal claim, to be inadequate. *See id.* at 303–04, 72 S.Ct. at 323–24; *cf. Rosewell,* 450 U.S. at 518, 101 S.Ct. at 1231–32 (stating that "[a] remedy to contest a tax that requires repetitive suits on the same issue in succeeding years may not be 'effi-

cient' "). The *Redwine* Court also found that an adequate state remedy which applies only to a portion of the taxes in controversy does not bar federal jurisdiction. 342 U.S. at 303 & n. 11, 72 S.Ct. at 323–24 & n. 11. On the other hand, the mere fact that a taxpayer must cross state lines to challenge an imposed tax system is not inefficient. *See Tully v. Griffin, Inc.,* 429 U.S. 68, 73, 97 S.Ct. 219, 222–23, 50 L.Ed.2d 227 (1976). The Court has also cautioned that a state remedy is not inadequate if it first requires exhaustion of administrative remedies. *See Grace Brethren Church,* 457 U.S. at 416 n. 35, 102 S.Ct. at 2512 n. 35; *see also McNary,* 454 U.S. at 133–38, 102 S.Ct. at 194–97 (Brennan, J., concurring) (reviewing Supreme Court decisions finding exhaustion requirement).

The Supreme Court has also suggested that state court relief may be delivered to a complainant with such delay as to render the underlying remedy inadequate. *See Rosewell,* 450 U.S. at 518–21, 101 S.Ct. at 1231–33. The Court in *Rosewell,* however, held that a two-year delay in mounting a tax challenge in state court still amounted to a "speedy" remedy after comparing this period to customary delays for civil cases in state courts and the corresponding federal district court. *See id.*

We conclude that Colonial has alleged sufficient facts in support of its claim that Georgia does not provide an adequate remedy to survive a motion to dismiss for lack of subject matter jurisdiction.[15]

*ing alone,* lift the jurisdictional bar of section 1341. *Cf. Waldron,* 788 F.2d at 738 (holding that absence of class motion mechanism in state court does not render state remedies inadequate). Rather, the nonavailability of such a cause of action is merely *one factor* to be considered along with a searching examination of purely state law remedies in determining whether Colonial has an adequate remedy in Georgia state courts.

**14.** Although not presently before us, we note that this issue implicates fundamental, but unresolved questions of whether a state court is *obligated* to take jurisdiction of a section 1983 claim. *See Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 234 n. 7, 107 S.Ct. 1722, 1730 n. 7, 95 L.Ed.2d 209 (1987); *see also Spenc-*

*er v. South Carolina Tax Comm'n,* 281 S.C. 492, 316 S.E.2d 386, *aff'd by an equally divided Court,* 471 U.S. 82, 105 S.Ct. 1859, 85 L.Ed.2d 62 (1984).

**15.** Appellant also challenged the district court's refusal to allow it discovery to determine whether the state provides a plain, speedy and efficient remedy. Since we are remanding this case for further factual development, we find it unnecessary to consider appellant's particular discovery requests. We note, however, that "the district court must give the plaintiff an opportunity for discovery and for a hearing *that is appropriate to the nature of the motion to dismiss.*" *Williamson v. Tucker,* 645 F.2d 404, 414 (5th Cir. May, 1981), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

For the foregoing reasons the judgment of the district court is REVERSED and the case REMANDED for further proceedings consistent with this opinion.