Irvin W. CAMPBELL, J.C. Lawyer, Backus Ferguson, and Thomas J. Hanahan III, on behalf of themselves and all other similarly situated, Plaintiffs,

v.

HILTON HEAD NO. 1 PUBLIC SERVICE DISTRICT, and Beaufort County, South Carolina, Defendants.

Nos. C.A.9:98–1572–23–76, 9:98–2972–23–43.

United States District Court, D. South Carolina, Beaufort Division.

Oct. 6, 1999.

Joel D. Bailey, Beaufort, SC, A. Camden, Lewis, Lewis, Babcock & Hawkins, for Plaintiffs.

Douglas W. MacNeille, Ruth and MacNeille, Hilton Head Island, SC, Henry J. White, Steve A. Mathews, James L. Ward, Jr., Sinkler & Boyd, Columbia, SC, for Hilton Head No. 1 Public Service District.

Stephen P. Hughes, Ladson F. Howell, Howell, Gibson and Hughes, Beaufort, SC, for Beaufort County.

### ORDER

DUFFY, District Judge.

Out of heed to the premise that the federal district courts are courts of limited jurisdiction, this court made a *sua sponte* inquiry into the extent and implication of jurisdiction over the issues raised in the plaintiffs' complaint, and the propriety of remand. Plaintiffs, taxpayers in the Hilton Head No. 1 Public Service District (the "District"), brought these two actions seeking refunds, damages, and declaratory relief from what they allege to be an unconstitutional assessment of state taxes. Based upon the immutable disfavor of federal interference in matters of exclusively state concern, this court deems remand proper.

### I. PROCEDURAL HISTORY

On June 1, 1998, plaintiffs filed two similar complaints in South Carolina state court and in this federal district court. In September, 1998, plaintiffs filed amended complaints in the both state and federal actions. As amended, those complaints contained identical captions and were virtually identical in their underlying factual allegations. The allegations addressed the various mechanisms by which the defendants raised funds to finance operating and capital needs—in particular: property taxes, availability fees, developer contributions, and others.[1] They also included charges of self-dealing and unjust enrichment in the expenditure of those funds. With respect to the legal background, the amended complaints alleged a taking of property without due process under the Fourteenth Amendment; lack of state statutory authority to impose such fees and charges; violation of state constitutional prohibitions against taxation without representation; racial discrimination; fraud; and other matters.

On October 7, 1998, defendants removed the state action to federal court; and the case was assigned to Senior District Court Judge Sol Blatt, Jr. On January 6, 1999, Judge Blatt entered a Consent Order of Consolidation. While this Order appeared to completely merge the state action into

---

1. Property taxes are charged based on the levy of a millage (percentage) rate against the assessed value of all taxable real and personal property in the District. "Availability fees" are charged annually by the District for water and/or sewer to landowners whose parcels of property are not connected to the water and/or sewer facilities of the District but whose parcels could be so connected to existing facilities if the landowner wished. "Developer fees" (also referred to as "capacity fees" or "contributions in aid of construction") are charged by the District to developers seeking water and/or sewer services for commercial and/or residential developments. The developer fee is charged at the time that the District commits to the property owner that the District will have sufficient water and sewer treatment capacity available to permit it to serve the property once it is developed.

the federal action, technically it consolidated the two cases for filing purposes only. Therefore, the two cases remain open and independent actions.

Following a hearing on class certification on June 17, 1999, Judge Blatt recused himself and the case was reassigned to the undersigned. Apparently as a result of the discussions held at and after the hearing on class certification, counsel for the parties agreed on a substantial restructuring of the parties and issues in the case.[2] On September 3, 1999, this court granted plaintiffs' motion to amend. Both defendants have now answered the Second Amended Complaint.

The Second Amended Complaint alleges: (1) violation of 42 U.S.C. § 1983 as a result of the deprivation of property without due process and the deprivation of equal protection arising from the allegedly unauthorized collections of real and personal property taxes; (2) violation of 42 U.S.C. § 1985 as a result of a conspiracy to effectuate the allegedly unauthorized collection of taxes, and thereby to deprive the plaintiff class of equal protection and protected privileges and immunities; and (3) an unlawful taking of property by the alleged unauthorized collection of taxes, in violation of state and federal constitutions.[3] The Second Amended Complaint seeks a refund, damages, injunctive relief, and attorneys' fees.

## II. FACTUAL BACKGROUND

In 1969, the District was created by the South Carolina General Assembly as a special purpose district, governed by a five-member commission, to supply water and sewer services to residents and entities located on the northern portion of Hilton Head Island. Since its creation, the District has acquired the assets and facilities of various other smaller utility systems located within its areas of operation. By 1995, the District served nearly twelve thousand (12,000) water customers, most of whom consisted of commercial establishments, multi-family residential units, and residents of large planned communities or plantations. Residential customers in the District are charged a base rate for water and sewer services, plus an additional sum based upon actual consumption. Additionally, the District has historically charged both real and personal property taxes.

The District, through resolution of its governing board which is appointed by the Governor, historically set an *ad valorem* property tax millage for operating purposes within the limitation (not more than ten (10) mills) established by the South Carolina General Assembly in the Districts' enabling legislation. The South Carolina Supreme Court, in *Weaver v. Richland Cty. Recreation District*, 328 S.C. 83, 492 S.E.2d 79 (1997), determined that practice to be a violation of the South Carolina constitutional provision prohibiting taxation by unelected officials. *See* S.C. Const. art. X, § 5. The court, however, recognized that its decision in *Weaver* was a departure from prior generally-accepted understanding and practice. In order to avoid undue disruption to the proper functioning of governmental entities,

---

**2.** This restructuring dismissed individual defendants, leaving only the District and Beaufort County as defendants. Second, the class for which certification is sought now consists of only those persons, other than the defendants, who reside or own property within the District and have been charged and/or have paid real and/or personal property taxes levied by the District and collected by Beaufort County, and who get no water or sewer service. Third, the allegations of racial discrimination, fraud and self-dealing were deleted. Furthermore, the Second Amended Complaint maintains its attack on the issuance of general obligation bonds and revenue bonds as the means of financing the costs of maintenance and expansion in the District.

**3.** The defendants understand the Second Amended Complaint to continue the attack on the levy of "availability fees," defined *infra*. note 1, which leads them to address the issue of whether an "availability fee" constitutes a tax for purposes any bar to jurisdiction based upon the Tax Injunction Act or federalism concerns. However, the court does not find any mention of "availability fees" in the Second Amended Complaint; therefore, that issue is not properly before the court.

the court made its ruling in that case prospective, giving the General Assembly two (2) years to provide a new mechanism for affected political subdivisions to finance their operations, and permitted the continued taxation pursuant to the old procedures for that interim period. *Id.* at 82. The court did not order any remedy or refund for taxes imposed in earlier years, including the year that was specifically challenged.

In 1998, the General Assembly passed legislation which took all discretionary taxing power out of the hands of appointed bodies such as the District's governing board. *See* 1998 S.C. Acts 2389 (codified as S.C.Code Ann. § 6–11–271 (Supp.1998)). In its place, the General Assembly itself directly exercised its own taxing power for purposes of financing the operations of such entities. As a result of this legislative action, the District itself no longer imposes any taxes for operating and administrative purposes.

### III. ANALYSIS

■ The Tax Injunction Act, 28 U.S.C. § 1341, provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such state." In *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981), the Supreme Court recognized that "[t]he statute 'has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations.'" *Id.* at 522, 101 S.Ct. 1221 (quoting *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976)). According to the Court in *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943),

the Tax Injunction Act should bar both injunctive and declaratory relief in state tax cases. *Id.* at 197–300. *See also California v. Grace Brethren Church*, 457 U.S. 393, 408, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982) (Tax Injunction Act prohibits declaratory judgment holding state tax law unconstitutional). Furthermore, the Supreme Court in *Fair Assessment In Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), held that because of principles of comity and federalism, Congress never authorized federal courts to entertain damages actions under section 1983 against the validity of state tax systems where state law furnishes an adequate legal remedy.[4] "[The Tax Injunction Act] and the decisions of this Court which preceded it, reflect the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation." *Id.* at 103, 102 S.Ct. 177 (citations omitted). Only upon a showing that state law furnishes no adequate legal remedy, can a federal district court hear a case which seeks injunctive, declaratory, or monetary relief for the unconstitutionality of a state tax system.

■ In opposition to remand based upon these principles, the plaintiffs maintain that neither the Tax Injunction Act nor the *Fair Assessment* decision preclude the amenability of this action to federal court. Plaintiffs claim the subject tax scheme has already been declared unconstitutional by the South Carolina Supreme Court in *Weaver v. Recreation District*, 328 S.C. 83, 492 S.E.2d 79 (1997), and as such a § 1983 action seeking damages for an already adjudicated deprivation of constitutional rights does not fall within the confines of the justification for a refusal to exercise jurisdiction.[5] *Weaver*, however,

4. The statutory phrase of the Tax Injunction Act requiring a "plain, speedy, and efficient" remedy is functionally equivalent to the equitable phrase requiring a "plain, adequate, and complete" remedy. *Fair Assessment*, 454 U.S. at 116, n. 8, 102 S.Ct. 177.

5. It is not settled that the principles upon which the Tax Injunction Act and the *Fair Assessment* decision are based preclude the exercise of federal jurisdiction in the most literal sense, or whether or not the federal judiciary's reluctance to hear such cases is a kind of refusal to exercise jurisdiction or ab-

does not relieve this court, if confronted with § 1983 claims, of the duty to declare the constitutionality of the taxes levied by the defendants. The court in *Weaver* declared the subject taxation scheme a violation of the South Carolina Constitution, not the Federal Constitution. In order to support a § 1983 cause of action, some violation of a federal right would have to be found. *See Hodge v. Jones*, 31 F.3d 157, 167 (4th Cir.1994); *Clark v. Link*, 855 F.2d 156, 161 (4th Cir.1988). *Cf. Fair Assessment*, 454 U.S. at 106–07, 102 S.Ct. 177 ("As in all other § 1983 actions, the award of such damages would first require a federal-court declaration that respondents, in administering the state tax, violated petitioners' constitutional rights.") Even acknowledging the fact that the challenged tax scheme is no longer in effect, any such order or declaration on its constitutionality would have the same disruptive effect upon state government as that warned against in *Fair Assessment.*

Plaintiffs also cite the *Weaver* decision as evidence that there exists no plain, adequate, and complete remedy in South Carolina. In *Weaver*, as explained *infra.*, the South Carolina Supreme Court held that their ruling that the subject tax scheme was unconstitutional in violation of the South Carolina Constitution should be applied prospectively, beginning on December 31, 1999, more than two (2) years after the September 1997 decision. 492 S.E.2d at 88. The court awarded no refunds or damages to the aggrieved taxpayer. The plaintiffs in this case argue that the outcome in that decision allowed the defendants to continue to collect taxes in violation of the United States Constitution, and left them with no other alternative remedy but to file suit under section 1983 in federal court.

While it is understandable that the plaintiffs may not deem the remedy provided by the *Weaver* court "adequate," the Supreme Court has set forth a level of adequacy that requires only the most fundamental fora in which to address the

stention. *See Fair Assessment*, 454 U.S. at

constitutionality of a state tax. In order to constitute a "plain, adequate, and complete" remedy, a state need only provide a taxpayer "with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *Rosewell*, 450 U.S. 503, 514–15, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). In other words, state procedures must not "preclude presentation and consideration of ... federal rights." *Id.* The remedies must meet certain "minimal procedural criteria" in order to allow a taxpayer some opportunity to raise his constitutional objections. *Id.* at 512–15, 101 S.Ct. 1221. In *California v. Grace Brethren Church*, 457 U.S. at 415–16, 102 S.Ct. 2498, the Supreme Court held that the state court remedy was not inadequate due to the fact that injunctive relief was unavailable because there were means through which the taxpayer could ultimately seek a judicial determination of the constitutionality of the tax at issue. A district court must scrutinize the totality of the state court remedies available to the taxpayer to determine whether or not she has an opportunity to raise constitutional objections. *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1245 (11th Cir.1991). *See, e.g. Balazik v. County of Dauphin*, 44 F.3d 209, 217 (3rd Cir.1995) (Pennsylvania procedures adequate); *Collins*, 921 F.2d at 1246 (Georgia remedies inadequate and fraught with delay); *Moore v. Trippe*, 743 F.Supp. 201, 210 (S.D.N.Y.1990) (New York declaratory judgment action adequate); In re *Gillis*, 836 F.2d 1001, 1012 (Kentucky administrative tax appeals adequate).

South Carolina provides at least two avenues to challenge a taxation issue. The first, and most comprehensive is an administrative procedure set forth for that purpose alone. The South Carolina Revenues Procedures Act of 1995, S.C.Code Ann. §§ 12–60–1 to 12–60–3390 (Law Co-op Supp.1998), provides a full administrative appeal process consisting of appeal to the South Carolina Department of Revenue,

119–132, 102 S.Ct. 177 (concurring opinion).

and then to an Administrative Law Judge (ALJ). *Id.* §§ 12–60–450 to –460. Appeals from the ALJ are heard by the South Carolina Court of Common Pleas (or the general circuit court), and may proceed on the normal route for direct appeals to the South Carolina Supreme Court. There is a requirement that the challenger exhaust administrative remedies prior to seeking review from the ALJ. *Id.* § 12–60–510. However, both the underlying department and ALJ determination include the opportunity for the challenger to be heard at a requested hearing. *Id.* § 12–6–460. The proceeding before the ALJ, when brought from the Department of Revenue is in the nature of a *de novo* hearing. *Reliance Insurance Co. v. Smith,* 327 S.C. 528, 489 S.E.2d 674, 677 (App.1997). While the Act does not speak directly to any constitutional challenges, the South Carolina Supreme Court in *Reliance Insurance* decided a question of state constitutionality in a tax appeal originating from the administrative procedure provided by the Act. The court considered the ALJ's review of the case, and ruled that the taxpayer's property valuation was not constitutionally defective. 489 S.E.2d at 678–79.

Secondly, South Carolina provides for constitutional challenges, both state and federal, to state tax issues under its Uniform Declaratory Judgments Act, S.C.Code Ann. §§ 15–53–10 to –140. *See, e.g., Williams v. Town of Hilton Head Island,* 311 S.C. 417, 429 S.E.2d 802 (1993) (declaratory action against town seeking to have real estate transfer fee ordinance declared unconstitutional under the state constitution); *Spencer v. S.C. Tax Comm'n,* 281 S.C. 492, 316 S.E.2d 386 (1984) (action challenging state tax statute as a violation of the Privileges and Immunities Clause of the United States Constitution). The totality of these two methods and the record of the state courts' willingness to hear constitutional challenges to tax issues lead this court to believe that those remedies satisfy the requirement that they be "plain, adequate, and complete."

Plaintiff's contention that South Carolina fails to provide an adequate remedy emanates directly from the South Carolina Supreme Court's refusal to grant any relief but declaratory relief in the identical tax challenge of *Weaver.* It is unclear from the *Weaver* opinion from which venue the case was brought. However, what is clear is that the South Carolina Supreme Court heard and considered constitutional issues, although they ruled upon only issues concerning the state constitution. Neither the Tax Injunction Act, nor principles of comity require that the state remedy be the best remedy, or even equal to that remedy which might be available in federal court. *Ayers v. Polk County,* 697 F.2d 1375, 1377 (11th Cir.1983); *see Collins,* 921 F.2d at 1244–45.

In *Spencer v. S.C. Tax Comm'n,* 281 S.C. 492, 316 S.E.2d 386, the plaintiffs, non-South Carolina residents, one of whom worked in Greenville, South Carolina, were denied certain South Carolina income tax deductions based upon section 12–7–750 of the South Carolina Code. In addition to seeking a refund for the alleged illegal income taxes paid, the Spencers also stated causes of action for damages under 42 U.S.C. § 1983, and attorneys' fees under 42 U.S.C. § 1988. The court held that the tax deduction provision violated the Privileges and Immunities Clause of the United States Constitution, and affirmed the lower court's award of a refund to the plaintiffs. *Id.* at 388. The court expressly declined to discuss the Spencer's equal protection, due process and commerce clause allegations. *Id.* Interestingly, however, the court declined to award the plaintiffs attorneys' fees under 42 U.S.C. § 1988, stating that

[t]he United States Supreme Court has not ruled that state courts are required to open their doors to § 1983 actions. Section 1983 does not provide for any substantive rights; it is remedial. State remedies for asserting rights may not be circumvented by invoking § 1983. It may be reasonably inferred that the sole

reason for [the plaintiffs'] alleging § 1983 was to justify the allowance of counsel fees. We do not believe this was contemplated by Congress when it enacted §§ 1983 and 1988.

(citations omitted). This statement could be interpreted to preclude damages actions under 42 U.S.C. § 1983 in a state court challenge to state taxes. *See, e.g., Harlan Sprague Dawley, Inc., v. Indiana Dep't of State Revenue,* 583 N.E.2d 214, 225 & n. 15 (Ind. T.C.1991) (interpreting *Spencer* as a refusal to hear § 1983 tax challenges if an adequate remedy is available). However, the impact such an interpretation would have on the adequacy of South Carolina's remedies in the context of *Fair Assessment* has little effect.

In 1995, the Supreme Court held in *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995), that where adequate state remedies exist under state law, a state court need not provide relief under § 1983. *National Private Truck Council* arose from a state court action challenging certain Oklahoma taxes as violating the "dormant" Commerce Clause. The Oklahoma Supreme Court ordered that state tax authorities award refunds pursuant to state law, but denied declaratory or injunctive relief under Oklahoma law and 42 U.S.C. § 1983, and held that the taxpayer could not obtain attorneys' fees under 42 U.S.C. § 1988. Rejecting the taxpayers argument, in the state tax context, that the Supremacy Clause requires state courts to enforce federal law, in that case § 1983 and 1988, the Supreme Court held that "Congress did not authorize injunctive or declaratory relief under § 1983 in state tax cases when there is an adequate remedy at law." *Id.* at 588, 115 S.Ct. 2351. In this interpretation of § 1983, the Court relied upon the same underpinnings as those relied upon in *Fair Assessment* "Our interpretation is supported not only by the background principle of federal noninterference discussed in [Fair Assessment] but also by the principles of equitable restraint discussed at length in that case." *Id.* at 590,

115 S.Ct. 2351. As state courts need not, and even must not, provide relief under § 1983 in state tax cases where an adequate remedy exists, *id.* at 592, 115 S.Ct. 2351, there can be no basis for the argument that South Carolina's remedies are inadequate due to any unwillingness, as foreshadowed in *Spencer,* to award such relief.

■ The final issue raised with regard to the propriety of remand in this instance concerns the defendants' removal of this action to federal court and whether such consent to a federal forum alleviates the need for comity. It has been regularly held that the restraint imposed both by the Tax Injunction Act and the principles of comity relied upon in *Fair Assessment* are restraints upon the courts, and not the parties. *See Hardwick v. Cuomo,* 891 F.2d 1097, 1104 (3d. Cir.1989) (defendant taxing authorities may not waive the bar of the Tax Injunction Act); *Balazik,* 44 F.3d at 218, n. 11 (state taxing authorities may not waive the comity bar). The court "may not ignore those considerations which the Supreme Court has consistently held to constrain federal court intervention and to promote federal court deference in state matters." *Cox Cable Hampton Roads, Inc. v. City of Norfolk,* 739 F.Supp. 1074, 1077 (E.D.Va.1990). Thus, remand is proper, despite the defendants' willingness to waive the principle of comity.

It is, therefore,

**ORDERED,** that

Civil Action No. 9:98–2972–23 be **REMANDED,** and

Civil Action No. 9:98–1572–23 be **DISMISSED,**

**AND IT IS SO ORDERED.**