[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 12, 2005
THOMAS K. KAHN
CLERK

No. 05-11941
Non-Argument Calendar

_____

D. C. Docket No. 05-80024-CV-DTKH

GEORGE MAY,

Plaintiff-Appellant,

versus

ALEXIA J. CAPOTE, individually,
SOUTH FLORIDA WATER MANAGEMENT DISTRICT,
jointly and severally,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 12, 2005)

Before TJOFLAT, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

George May, proceeding pro se, appeals the district court's order dismissing his 42 U.S.C. §§ 1983 and 1985 action. Because the issues raised and relief sought before the district court were inextricably intertwined with a previous state court judgment, the district court did not err in dismissing May's complaint for lack of subject-matter jurisdiction. Accordingly, we **AFFIRM**.

## I. BACKGROUND

May filed a pro se civil action against Alexia Capote, an Assistant Attorney General for the state of Florida, and the South Florida Water Management District ("SFWMD"), a Florida state agency, alleging several violations of the United States Constitution. R1-1 at 4. May asserted that the defendants (1) condemned his property and refused to pay him just compensation of $171,666,000, (2) threatened him with death and contempt of court in order to prevent him from accessing the courts and presenting his evidence of just compensation, and (3) on the 11th, 19th, and 24th of August 2004, "ratified their signed written corroborated letter confessions" of their deprivation of May's constitutional and civil rights. Id. at 3-5. May requested that the district court enter judgment against the defendants for $171,666,000, declare the state court orders of 11 August 2004, 19 August 2004, and 24 August 2004 unconstitutional, and enjoin the defendants from enforcing any order depriving May of his constitutional and civil rights. Id. at 5.

In addition to his complaint, May filed attachments of various state court orders and his state court appellate brief. See generally R1-1, exh. A.

In response, defendant Capote filed a motion to dismiss May's complaint and for sanctions. R1-4. Capote alleged that (1) May was enjoined from filing suit because he failed to post the required $1500.00 bond pursuant to a 30 August 2000 order of the district court[1], (2) May failed to state a cause of action, (3) Capote was entitled to sovereign and qualified immunity, and (4) May should be sanctioned for filing a frivolous, duplicative action. Id. at 1, 4. Defendant SFWMD similarly filed a motion to dismiss May's complaint and for sanctions, asserting allegations similar to those stated in Capote's motion. R1-5. In addition to its motion, SFWMD attached the jury verdict from the underlying state proceedings, showing a jury valued May's property at $32,700. Id., exh. B. May responded by filing motions and supporting memoranda for default judgment against defendants. R1-6, 8. May repeated his allegations from his complaint and added that defendants filed "false, fraudulent, forged, court papers with the honorable court herein." R1-6 at 4; see generally R1-8.

---

[1]On 30 August 2000, due to May's repeated filing of frivolous and baseless lawsuits, the district court issued an order enjoining May from filing any further lawsuits in the district court unless he first posted a $1500.00 contempt bond. See R1-5, exh. A.

The district court dismissed with prejudice May's complaint for lack of subject-matter jurisdiction. R1-10. The court determined that, in his complaint, May requested the district court find that the state court wrongly decided his condemnation case and that three other state court judgments were void and violative of his constitutional rights. Id. at 4. The district court found, however, that, under the Rooker-Feldman doctrine, Rooker v. Fid. Trust Co., 263 U.S. 413, 415-16, 44 S. Ct. 149, 150 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476-82, 103 S. Ct. 1303, 1311-15 (1983), it did not have subject-matter jurisdiction because May's constitutional challenges to the result of his state condemnation case and the three adverse state court rulings were inextricably intertwined with prior state court judgments. Therefore, the district court dismissed May's complaint and denied as moot defendant's motions to dismiss for failure to state a claim and immunity challenges. Id. at 5.

## II. **DISCUSSION**

On appeal, May argues that defendants have admitted all of his claims through their failure to deny their unlawful acts and deprivations of May's constitutional and civil rights and their "signed written, corroborated, letter confession dated January 24, 2005, and January 31, 2005." Appellant's Brief at 2. Further, May contends that the Rooker-Feldman doctrine is not a bar to his claims

4

because his allegations that the defendants (1) prevented him from accessing the state courts and presenting his evidence of just compensation to a jury, (2) filed fraudulent documents, and (3) threatened May with death, are assertions of new legal wrongs and illegal acts. Therefore, May maintains that the defendants have violated and deprived him of his "protected Constitutional Rights protected under Article I, Section 9, Clause I, Article I, Section 10, Clause I, Article VI, the First, . . . , Fourth, Fifth, Ninth, Seventh, Thirteenth, Fourteenth [] Amendment, the Due Process[] Clause, the Equal Protection Clause." Id. at 11.

We have held, in Cadet v. Bulger, 377 F.3d 1173, 1179 (11th Cir. 2004), that "[f]ederal courts are obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking." (Citation and punctuation omitted). Questions of subject-matter jurisdiction are reviewed de novo. Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1331 (11th Cir. 2001). In Goodman, we explained that

> [t]he Rooker-Feldman doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts. The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are "inextricably intertwined" with a state court judgment. A federal claim is "inextricably intertwined" with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. However, even if a claim is "inextricably intertwined" with the state court judgment, the doctrine does not apply if the plaintiff had no reasonable opportunity to raise his federal claim in state proceedings.

5

Goodman, 259 F.3d at 1332 (citation and quotation omitted).

In order for Rooker-Feldman to bar a district court's jurisdiction, four criteria must be met. Amos v. Glynn County Bd. of Tax Assessors, 347 F.3d 1249, 1265 n.11 (11th Cir. 2003). The four criteria are:

> (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment.

Id. (citations omitted). The Supreme Court has held that the Rooker-Feldman doctrine is confined to cases that are "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., ___ U.S. ___, ___, 125 S.Ct. 1517, 1521-22 (2005).

May's case fits squarely within the type of cases to which the Supreme Court determined the Rooker-Feldman doctrine applies. See id. at ___, 125 S. Ct. at 1521-22. In May's state court condemnation proceedings, occurring prior to the commencement of the district court proceedings, a jury determined that May's property was worth $32,700, rather than the $171,666.000 that May asserted. R1-

6

5, exh. B; R1-1 at 3, 5. Moreover, the state court denied May's motion for entry of default judgment and dismissed his action with prejudice. R1-1, exh. A. Upon losing in that state court proceeding, May requested that the district court review that judgment and supplant its own valuation of May's property. Id. at 5. The procedural framework in May's case is, therefore, similar to that described by the Supreme Court in Exxon Mobil. See Exxon Mobil, ___ U.S. at ___, 125 S. Ct. at 1521-22.

This case also satisfies the four criteria we set forth in Amos. See Amos, 347 F.3d at 1265 n.11. First, the parties to the instant action are the same parties as in state court. See R1-1, exh. A. Second, the prior state court ruling was a final judgment on the merits because a jury determined the valuation of May's property in the underlying condemnation action and the state court denied May's subsequent challenges to the jury's determination. See R1-5, exh. B; R1-1, exh. A. Third, May had a reasonable opportunity to raise his federal claims in the state court proceedings. During the condemnation trial, May presumably could have raised his concerns regarding violations of his constitutional rights due to defendants failure to pay him just compensation and their filing of fraudulent documents, and there is no evidence in the record indicating the state court prevented him from doing so. See generally R1. Additionally, May did, in fact, raise the issue of the

7

defendants' fraudulent documents in his brief to the state appellate court, but failed to tie that allegation to a violation of his constitutional rights. See R1-1, exh. A. Moreover, if the defendants were threatening May with death in order to prevent him from accessing the courts, as May contended in his district court complaint, May had a reasonable opportunity to raise that issue in one of the numerous state court actions he pursued following the condemnation trial.

Finally, the issues May presented before the district court were inextricably intertwined with the state court's judgment. May's allegation that the defendants violated his constitutional rights by failing to pay him just compensation and threatening him with death and contempt of court is inextricably intertwined with the prior state court condemnation judgment because, in order for the district court to find May's allegation is true, it would inevitably need to find that the state court wrongly decided the condemnation issue. See Goodman, 259 F.3d at 1332 (holding that "[a] federal claim[ is] "inextricably intertwined" with the state court judgment [if] the federal claim[] succeed[s] only to the extent that the state court wrongly decided the issues before it"). This is further evidenced by the fact that May requested that the district court enter judgment against defendants for $171,666,000, thereby replacing the state court's judgment with that of the district court. See R1-1 at 5. Similarly, the relief that May requested declaring three prior

8

state court judgments unconstitutional on the grounds that the state court relied on fraudulent documents from the defendants in making those judgments, is also inextricably intertwined with prior state court judgments because in order for the district court to grant May his requested relief, the court would have to find that the state court wrongly determined the documents were not fraudulent. See Goodman, 259 F.3d at 1332.

### III. CONCLUSION

Because the district court cannot grant May his requested relief without first determining that the state court wrongly decided the issues before it, May's claims are inextricably intertwined with the prior state court judgments. As such, May's complaint is barred under the Rooker-Feldman doctrine and, therefore, the district court did not err in determining that it lacked subject-matter jurisdiction. Accordingly, we **AFFIRM.**