[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 11, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15227
Non-Argument Calendar
_____

D. C. Docket No. 04-01982-CV-WBH-1

ELAINE CHRISTOPHE,

                                        Plaintiff-Appellant,

versus

LEON MORRIS,
ALLISON MORRIS,
MORRIS CAPITAL MANAGEMENT INC.,
MARK ANDERSON, Sheriff Deputy,
KEITH KNOWLTON, et al.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 11, 2006)**

Before TJOFLAT, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Elaine Christophe appeals pro se the district court's dismissal of her complaint for lack of jurisdiction under the Rooker-Feldman doctrine.[1] For the reasons set forth more fully below, we affirm in part and reverse and remand in part as to one claim under 42 U.S.C. § 1983.

Christophe filed an amended complaint in federal district court, naming the following defendants: (1) Allison and Leon Morris, homeowners, in their individual capacities; (2) Morris Capital Management, Inc.; (3) Sheriff Deputy Mark Anderson, in his individual capacity; (4) Cherokee County Sheriff Roger Garrison, as Anderson's employer; (5) Keith Knowlton, homeowner, in his individual capacity; (6) Ray Johnson, moving company owner or worker, in his individual capacity; (7) Antoine Writmyer, moving company worker, in his individual capacity; (8) Cherokee County State Court Chief Clerk Anne Redeau and Cherokee County State Court in their governmental (official) capacities; and (9) Cherokee County Magistrate Court Chief Clerk Brenda Grambling and Cherokee County Magistrate Court, in their governmental (official) capacities.

Christophe's complaint alleged the following. Christophe entered into a written lease-to-own agreement, with an option to purchase, with Leon and Allison

---

[1] Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476-82, 103 S.Ct. 1303, 1311-15, 75 L.Ed.2d 206 (1983).

2

Morris (collectively, Morris) covering the period of November 14, 2001, to November 14, 2002, for the residential property located at 408 Amber Lane in Woodstock, Georgia. Following a dispute concerning the cost of a paint job to the house and how much of the cost Christophe could deduct from her monthly rental payments, Morris initiated a dispossessory proceeding in state court alleging that Christophe had failed to pay rent and made unauthorized alterations. Christophe filed an answer in which she requested a jury trial and counterclaimed for harassment, slander, and defamation. The Cherokee County magistrate's court telephoned Christophe to inform her that a hearing had been scheduled for the dispossessory proceeding, although no written notice was mailed, and, when Christophe failed to appear at the hearing, a default judgment was entered against her. Christophe appealed the judgment to state court and received notice that a non-jury trial would be conducted on August 5, 2002. Prior to the trial date, the parties filed criminal charges against one another—Christophe accused Morris of criminal trespass and Morris accused Christophe of criminal damage to property. The parties were referred to mediation by a magistrate judge, and the parties resolved to dismiss all charges if a "no contact" order issued to prohibit contact until the "[dispossessory case pending] is settled in full including appeals if any."

Christophe's case was heard before Judge Gober, who, after a bench trial,

ruled against Christophe. On August 14, Morris, accompanied by Sheriff's deputy Anderson, Knowlton, Johnson, and Writmyer, served Christophe with what she alleged to be a false "writ to vacate." Deputy Anderson, after informing Christophe that she was being evicted, told the moving crew to remove all of her personal property and place it on the front lawn. Christophe was permitted to take with her several decorative objects throughout the house. When she attempted to remove a chandelier, however, Anderson objected, and after calling and consulting with Judge Gober, informed Christophe that the chandelier belonged to Morris. Anderson later informed Christophe that all of her furniture had been removed and refused to let Christophe enter the house for inspection.

In Count I, Christophe alleged that Anderson, Morris, Knowlton, and the Cherokee County Sheriff's Office, acting under color of state law, violated her Fourth Amendment and due process rights by entering her home, seizing her property, and evicting her, in violation of 42 U.S.C. § 1983. Next, she alleged that all of the defendants conspired to interfere with her civil rights and to deny her due process and equal protection under law, in violation of 42 U.S.C. § 1985. Christophe further alleged that Anderson, the Magistrate Court, and the Sheriff's office denied her rights and protection, in violation of 42 U.S.C. § 1981 and the Georgia Constitution. Count IV alleged a violation of her reasonable expectation

of privacy by all of the defendants. Count V alleged state violations of misrepresentation and fraud, deprivation of property rights, wrongful conversion, trespass, wrongful interference with enjoyment of rental property by all defendants. Count VI contains numerous claims for violation of her property rights, and Count VII alleges a breach of fiduciary duty against Morris Capital Management, Inc. As relief, Christophe sought numerous declaratory judgments and damages, but as to Count I specifically, she requested that the district court declare void the August 5, 2002, state court judgment against her that resulted in her eviction. She also, however, requested a declaratory judgment that the defendants undertook an illegal search and seizure by committing a wrongful or illegal eviction, as well as damages. (Id.).

Deputy Anderson responded by filing a motion to dismiss the amended complaint under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), arguing, inter alia, that the court lacked jurisdiction under the Rooker-Feldman doctrine. Alternatively, he argued that the complaint failed to state a claim and that he was entitled to quasi-judicial immunity, official immunity, and qualified immunity. As to due process, Anderson argued that Christophe had not established a fundamental right to live in Morris's home and had received all of the process to which she was entitled prior to being evicted.

As an exhibit, Anderson included a transcript of the August 5, 2002, dispossessory proceedings before Judge Gober.  After hearing evidence, Judge Gober believed that the only relevant evidence was the lease agreement itself, which did not provide that the lessee could substitute payment for repairs in lieu of rent, and, therefore, Christophe was found to be in breach of the agreement for failing to pay rent.  Thus, Judge Gober granted judgment in favor of Morris and issued a writ of possession valid August 5, 2002, the day of the hearing.  The next exhibit shows what purports to be a notice of appeal, entitled "Appeals to Superior Court and to the Court of Appeals," with a sentence stating that Christophe was taking an appeal to the Superior Court of Cherokee County from the August 5 judgment.  Lastly, Anderson included Judge Gober's order, signed on August 8, 2002, memorializing his oral decision from August 5, 2002, and granting possession to Morris.

The "governmental entities," encompassing defendants Garrison, Reneau, Cherokee County State Court Clerk, and Grambling, Cherokee County State Magistrate Court Clerk, also filed a motion to dismiss. Like Anderson, they argued, inter alia, that the Rooker-Feldman doctrine barred the court from considering Christophe's claims.  Sheriff Garrison argued that he was entitled to Eleventh Amendment immunity for any actions taken in his official capacity.  To the extent

6

that the complaint asserted claims against Garrison, Reneau, and Grambling in their individual capacities, they argued that Chirstophe had failed to allege that they were directly involved or to allege any facts that suggested the existence of supervisory liability. Alternatively, the defendants argued that they were entitled to qualified or official immunity. In addition to the exhibits presented in Anderson's motion, the defendants also submitted a police report filed by Christophe regarding a stolen garage door opener, an affidavit for a warrant to issue for the arrest of Morris for theft by taking, and the result of the mediation, i.e., the "no contact" compromise.

Christophe filed a response to the "governmental entity" defendants.[2] Christophe, at the outset, argued that the defendants' challenge to jurisdiction was "facial," not factual, and further argued that the court could not consider the documents filed by the defendants, including the transcript of August 5 bench trial. Christophe then argued that the Rooker-Feldman doctrine did not apply because the only claim addressed by a state court on August 5 was whether Christophe had paid her rent, not her present claim regarding the defendants' unlawful conduct on August 14. Next, Christophe argued that Anderson was not entitled to quasi-

---

[2] Christophe also filed a response to Anderson's motion to dismiss, making the same arguments as the response to the governmental entities. Accordingly, only one of the two responses is summarized here.

7

judicial immunity because he acted without a facially valid judicial order or warrant. She further argued that Anderson violated her Fourth Amendment rights by assisting Morris in removing her property, and, moreover, argued that Anderson's actions were unreasonable because he did not act pursuant to a valid writ of possession or pursuant to the Georgia Code. Finally, Christophe argued that the "governmental entities" were not entitled to qualified or official immunity because the defendants were sued in their individual capacities, did not rely upon a facially valid judicial order as required, and acted in intentional violation of Georgia Code, demonstrating actual malice.

Christophe included a number of exhibits, including a copy of the Cherokee County Sheriff's Office policies for dispossessory proceedings. Next, she included an "incident report," indicating that, on August 14, 2002, Anderson presided over a "set-out" and eviction of Christophe. The report indicates that "WP not on file," but it is unclear whether or not "WP" stands for writ of possession. What appears to be Anderson's personal account of the eviction was also included, and he stated that, upon arrival at Christophe's home, he received no response to knocks. Morris let Anderson in through the garage, and Anderson entered the home through a kitchen door, eventually finding Christophe in a bathroom. Anderson explained that he was there to evict her on a judge's order, to which Christophe replied that

she had an appeal pending.  Anderson showed Christophe the writ, and contacted Belinda Bingaman at the "warrants office" regarding Christophe's appeal claim. Bingaman told Anderson that Christophe had not correctly filed her appeal, and the eviction, therefore, continued.  Anderson later contacted Bingaman again to verify whether Christophe would be permitted to remove a chandelier affixed to the property, and after consulting with Judge Gober, it was determined that she could not.  All of Christophe's personal property was placed on the front lawn, and a walk through indicated that none of her property was left behind.  Finally, among the remaining exhibits was an incident report filed on August 23, 2002, in which Christophe complained that she was missing certain property following her eviction and "set out."

The "governmental entities" filed a reply, generally rebutting Christophe's arguments, but not adding anything substantive to their original motion to dismiss other than an argument that, to the extent that Christophe meant to sue the Clerk's Office for Cherokee County's State and Magistrate Courts, those entities were not capable of being sued.  Anderson similarly filed a reply, arguing that the court should consider the documents filed with his motion to dismiss because the Rooker-Feldman doctrine was a factual attack on the court's subject matter jurisdiction.  The remainder of Anderson's reply rebuts Christophe's arguments

9

and repeats the substantive arguments of his original motion to dismiss.

Next, Knowlton filed an answer to Christophe's complaint, arguing that Christophe had no standing to sue him on constitutional grounds because he was neither the landlord nor the tenant in the dispute and was a private citizen not subject to the U.S. Constitution's standards under the Fourth or Fourteenth Amendments. Thus, he argued that the court lacked jurisdiction over him and the complaint should be dismissed. Knowlton then generally denied or asserted that he was without sufficient knowledge to admit or deny Christophe's allegations.

Morris and Morris Capital Management, Inc., also filed an answer and defenses, raising 26 defenses, including lack of jurisdiction and failure to state a claim. Like Knowlton, Morris, et al., generally denied, found no need to respond, or stated that they had insufficient knowledge with which to admit or deny Christophe's allegations. Christophe filed a reply to Morris, et al., taking issue with a number of things and offering rebuttals to all 26 defenses raised in Morris's answer.. The gravamen of her response, however, was consistent with her replies to the other defendants—she argued that the court had subject matter jurisdiction to consider her claim that her civil rights were violated when Anderson and Morris evicted her and removed her property without a proper writ of possession.

The district court issued an order and opinion granting all of the defendants'

10

motions to dismiss. After summarizing all of Christophe's various allegations, the district court found that, while Christophe's federal constitutional claims were not specifically presented to the state court that considered the underlying landlord/tenant dispute, they were inextricably intertwined with that state court judgement "in the sense that the federal claims will succeed only to the extent that this Court determines that the state court's judgment in favor of the landlord and against plaintiff was wrong." The court further found that, in order to determine the constitutional sufficiency of the procedures used in state court, it would have to determine the constitutionality of the state court's particular actions in Christophe's case, and, therefore, Christophe's suit amounted to a "prohibited appeal of the state-court judgment . . . because the relief [Christophe] explicitly seeks is a federal judgment that will change the state court result." Thus, the court found that the <u>Rooker-Feldman</u> doctrine barred the court from considering any of Christophe's claims.

Moreover, the court found that Christophe had a reasonable opportunity to present her claims in state court and that the essence of her claims were basically the same as those asserted in the state court proceeding. It found that the defendants acted in accordance with the state court order that Christophe was attempting to challenge in federal court and that Christophe's constitutional

violations were related to the state court's actions and the subsequent eviction based on the state court's order. The court found that Christophe had the opportunity to contest the landlord's allegations in the dispossessory action and to challenge the writ of possession. Furthermore, the court found that Christophe's attempt to style her action as a constitutional civil rights violation could not overcome the Rooker-Feldman doctrine. Finally, the court noted that, if Christophe were aggrieved in any way, she could have appealed for relief through the state appellate system. The court noted that Christophe had apparently tried to appeal, but did so improperly, and concluded that she was not now permitted to appeal the state court's decision in federal court.

Christophe filed a motion for reconsideration, generally arguing that the Rooker-Feldman doctrine did not apply because she was not seeking a review of the state court's judgment. Later, Christophe filed her notice of appeal, and the district court subsequently denied her motion for reconsideration.

On appeal, Christophe argues that the district court erred because her federal claims, if successful, will not call into doubt the state court decision, which she contends dealt only with the issue of whether she breached her lease agreement. She argues that she is seeking only damages from the "independent, detached, and unlawful Constitutional violations she suffered" following that state court

12

judgment. She argues that the defendants evicted her without proper legal authority because they did not have a valid writ to vacate or warrant and violated the Georgia Code. Christophe also argues that her state court proceeding did not trigger the Rooker-Feldman doctrine because all of federal claims arose after judgment had been entered against her in state court, and, in any event, her federal claims are not inextricably intertwined with the state court judgment. She further argues that she did not have a reasonable opportunity to present her claims because she was denied both her right to appeal and her statutory right to a stay before the state court judgment against her could be executed. Next, Christophe argues that the district court committed factual error by finding that Judge Gober had approved of her eviction, which she argues was in violation of the "no contact" order, which prohibited Morris from contacting her until her case was settled, including appeals, as well as of the Georgia code. However, Christophe also argues that her Fourth Amendment claim "greatly depends" on the propriety of Judge Gober's order, and the district court's factual findings were clearly erroneous. Finally, Christophe argues that Supreme Court precedent supports her argument that her federal claims are not barred under the Rooker-Feldman doctrine, and further argues that, under Georgia state law, the federal district court had jurisdiction.[3]

---

[3] This argument is easily dispensed with. Federal district courts are not conferred jurisdiction by the State of Georgia, but rather by Chapter 85 of the United States Code, 28

13

As a preliminary matter, Christophe does not offer any argument concerning the dismissal of her 42 U.S.C. §§ 1981, 1985, or 1986 claims, choosing instead to focus her argument on 42 U.S.C. § 1983. We, therefore, conclude that these claims are abandoned. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."). We now turn to her § 1983 claim.

Whether the district court correctly determined that the Rooker-Feldman doctrine divested it of subject matter jurisdiction is reviewed de novo. Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1331 (11th Cir. 2001). "The Rooker-Feldman doctrine places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." Id. at 1332. The Rooker-Feldman doctrine bars lower federal court jurisdiction where four criteria are met: "(1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court

U.S.C. § 1330, et al.

14

or was inextricably intertwined with the state court's judgment." Storck v. City of Coral Springs, 354 F.3d 1307, 1310 n.1 (11th Cir. 2003). It is noted that, aside from Morris, the other defendants were not parties to the state court action. However, the "party" that matters is the plaintiff. See, e.g., Amos v. Glynn County Bd. of Tax Assessors, 347 F.3d 1249, 1265 n.11 (11th Cir. 2003); Roe v. State of Ala. by and through Evans, 43 F.3d 574, 580 (11th Cir. 1995); Johnson v. De Grandy, 512 U.S. 997, 1005-06, 114 S.Ct. 2647, 2654, 129 L.Ed.2d 775 (1994). Christophe clearly was a party to the state court action.

We have stated that the "Rooker-Feldman doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts." Goodman, 259 F.3d at 1332. "The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment." Id. "A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Id. "However, even if a claim is 'inextricably intertwined' with the state court's judgment, the doctrine does not apply if the plaintiff had no 'reasonable opportunity to raise his federal claim in state proceedings.'" Id.

We conclude that Christophe's federal claims were not, strictly speaking,

15

presented to the state court that ruled against her in the landlord-tenant dispute that resulted in her being dispossessed and evicted. Thus, review in this case is limited to whether her federal constitutional claims—essentially a Fourth Amendment claim—are inextricably intertwined with the state court judgment and whether she had a reasonable opportunity to present her federal claims in the state court proceedings. Id.

To the extent Christophe's complaint was construed as a challenge to the state court's ruling that she violated her lease, and, therefore, that the landlord was legally permitted to an order of eviction or dispossession, the district court properly dismissed the complaint under the Rooker-Feldman doctrine because federal courts are not the proper venue for appealing a state court judgment. There was ample support for applying Rooker-Feldman to the majority of Christophe's claims, as part of her relief included voiding the state court judgment entered against her. We affirm as to any claim that the state court judgment should be voided.

Christophe also raises a general due process concern, but we conclude that it is meritless. Christophe was given notice and opportunity to be heard in state court regarding the grounds for her eviction, and whatever happened to render her appeal of the judgment against her inoperable, her remedy for the actual order of eviction and judgment in favor of Morris is not an appeal to this Court. See Grayden v.

16

Rhodes, 345 F.3d 1225, 1236-37 (11th Cir. 2003) (holding that, in general, "an eviction must be preceded by notice and an opportunity to be heard," but that certain exigent circumstances would permit the government to evict a tenant prior to giving notice and opportunity to be heard); Staley v. Ledbetter, 837 F.2d 1016, 1018 (11th Cir. 1988) ("The federal courts are not a forum for appealing state court decisions."). A review of the procedures employed by the state court, including whatever procedure dismissed her appeal of the state court judgment, would necessarily have a direct impact on the state court's judgment and decision, and, therefore, this claim, as the district found, was properly barred by the Rooker-Feldman doctrine.

However, a closer reading and liberal construction of Christophe's pro se complaint reveals that, while she may, in part, be challenging the order of eviction, she is also claiming that her constitutional rights were violated, not by the fact of the eviction ruling, but by the manner in which the eviction itself was carried out at the direction of the Sheriff's office and Deputy Anderson. See Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (explaining that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). She claims that Deputy Anderson and others violated her Fourth Amendment rights by forcibly entering her home and

17

removing her personal possessions without presenting to her a proper warrant or writ. Thus, to the extent that Christophe is complaining about the manner in which the judgment against her was executed or carried out, we conclude that this claim is not "inextricably intertwined" with the state court's ruling because the fact that she lost in court and was to be evicted pursuant to the court's ruling is a separate and distinct issue apart from how that ruling was effectuated by the Sheriff's office. Lastly, Christophe's state proceedings centered on whether or not she would be evicted, and she could not reasonably have been expected at that time to raise any issues about the manner in which the Sheriff's office would conduct the eviction and execute the judgment against her, as the eviction had not yet taken place at the time of the hearing. Cf. Goodman, 259 F.3d at 1333-34 (concluding that the issue of propriety of a search of a home prior to a custody hearing was not and could not have been raised during that hearing, and, therefore, Rooker-Feldman did not apply to that claim).

Moreover, if, as Christophe alleges, the Sheriff's office entered her apartment without a warrant or a valid writ and began removing her belongings, this claim may, in fact, be actionable under the Fourth Amendment and 42 U.S.C. § 1983. The Supreme Court has recognized that the participation of a police officer in an improper eviction constitutes a seizure in violation of the Fourth

18

Amendment. See Soldal v. Cook County, Ill., 506 U.S. 56, 71-72, 113 S.Ct. 538, 548-49, 121 L.Ed.2d 450 (1992). The Court further noted that the "reasonableness" of the seizure was still the touchstone of the analysis and that, if an officer acted pursuant to a valid court order, a showing of unreasonableness "would be a laborious task indeed." Id. at 71, 113 S.Ct. at 549.

The merits of Christophe's case were not reached in the instant case because all of Christophe's claims were dismissed under the Rooker-Feldman doctrine, and we express no opinion as to the merits. Moreover, none of the defendants' various other arguments and defenses, including immunity defenses, were reached for the same reason. In Goodman, we remanded a case back to district court because the Rooker-Feldman doctrine was improperly applied as to one claim, but affirmed as to the two other claims to which it properly applied. Goodman, 259 F.3d at 1334. In so doing, however, we expressed no opinion on the merits of the claim and left the district court free to decide, in the first instance, whether the claim was barred by qualified or absolute immunity or if the claim failed on the merits. Id. at n.8.

The defendants attempt to distinguish Goodman by arguing that here, unlike in Goodman, the challenged "eviction" occurred after the initiation of state dispossessory proceedings and "after the entry of orders that specifically authorized and permitted the conduct of which plaintiff now complains." In

19

Goodman, the plaintiffs sought damages based on alleged constitutional violations, not just injunctive relief from a state court custody judgment, and as to one claim—a Fourth Amendment illegal search claim—we held that the claim regarding the search could proceed because none of the evidence seized from that search was ever introduced at a subsequent custody hearing, and, therefore, "[n]o issue involving the search was or could have been raised in the custody proceeding." Goodman, 259 F.3d at 1333-34. Here, while the eviction proceeding had concluded, the alleged Fourth Amendment violation—which appears to be that the eviction was performed without a valid writ or warrant—could not have been raised precisely because it occurred after proceedings had already concluded. Thus, Goodman is similar in one important respect: regardless of when the allegedly illegal search or seizure occurred, the issue in this case could not have been presented at the time of the underlying state proceeding. Accordingly, Goodman renders some support to Christophe's arguments.

In light of the foregoing, we conclude that the district court erred by dismissing all of Christophe's claims. Like in Goodman, we reverse the district court's judgment regarding the allegedly illegal Fourth Amendment seizure and leave the district court free, on remand, to decide the merits of Christophe's claim

20

and the defendants' immunity and other defenses on remand.[4] Cf. State Farm Mut. Auto. Ins. Co. v. West, 723 F.2d 1518, 1522 (11th Cir. 1984) ("[w]hen attention has been focused on other issues . . . it may be appropriate to remand the case rather than deal with the merits . . . in this Court").  We express no opinion about the merits of any of the parties' remaining arguments.

The district court's judgment, therefore, is REVERSED insofar as the claim involving the allegedly illegal search is concerned.  It is AFFIRMED in all other respects.  The case is REMANDED for further proceedings consistent with this opinion.

---

[4] Although the district court declined to give its reasons for not addressing them, Christophe's state law claims need not be addressed here because if the district court, on remand, concludes that it lacks jurisdiction for a separate, independent reason, the state law claims should also be dismissed for lack of jurisdiction under 28 U.S.C. § 1367(c)(3).